## Alexandria

PHYLLIS J. KNOTT

v.

## BLUE BELL, INC. & LIBERTY MUTUAL INS. CO.

No. 0499-87-4

Decided November 1, 1988

COUNSEL

George Warren Shanks, for appellant.

Thomas G. Bell, Jr., for appellees.

OPINION

DUFF, J. — Phyllis J. Knott appeals a decision of the Industrial Commission that held that her bilateral carpal tunnel syndrome was not compensable under the authority of *Western Electric Co. v. Gilliam*, 229 Va. 245, 329 S.E.2d 13 (1985). She contends that the uncontradicted medical evidence in the record proves her carpal tunnel syndrome was a compensable occupational disease as defined in Code § 65.1-46 and accordingly, the *Gilliam* decision is not controlling. We agree and reverse.

The claimant was employed by Blue Bell, Inc., and for several years had been assigned the task of riveting garments, which involved repetitive pushing, pulling and lifting with her hands. In April 1985, she developed bilateral hand pain, numbness and weakness. Her condition was diagnosed by Dr. Frederick L. Fox, an orthopedist, as bilateral carpal tunnel syndrome. A right carpal tunnel release and flexor synovectomy was performed on June 3, 1985. Dr. Fox unequivocally stated that the claimant's condition arose out of, and in the course of, her employment. In his report of September 24, 1986, Dr. Fox specifically addressed the six statutory conditions required by Code § 65.1-46,[1] that must be satisfied before a disease can be held to arise out of the employment. He concluded that each of those conditions were satisfied in Mrs. Knott's case. No medical evidence was introduced by the employer and carrier to rebut the report. They relied solely upon the holding of *Gilliam*, and the case was submitted to the deputy commissioner and the full commission upon the medical record

---

[1] Even though the doctor's report was written after July 1, 1986 (effective date of Code § 65.1-46.1, which extended coverage to ordinary diseases of life under very limited circumstances), the employment, all treatment for claimant's condition and the claimed disability occurred prior to the adoption of Code § 65.1-46.1. No contention is made that this Code section is applicable.

offered by the claimant. The commission accepted the *Gilliam* case as controlling and this appeal ensued.

■■■ Our inquiry begins with an examination of Code § 65.1-46 as it appeared prior to the legislative changes effective July 1, 1986. An "occupational disease" is a disease that arises out of and in the course of employment. It so arises only if it is apparent to the rational mind that six specific conditions are satisfied.[2] Excluded from the definition of "occupational disease" are ordinary diseases of life to which the general public is exposed outside of the employment, except in two instances, neither being applicable to the facts of the case.

The employer contends that *Gilliam* requires a finding that any disease which is incurred gradually as the result of repetitive trauma is, as a matter of law, an ordinary disease of life to which the general public is exposed and thus can never qualify as a compensable occupational disease. We have carefully analyzed *Gilliam* and find that it does not paint with as broad a brush as the employer contends.

*Gilliam* involved the disease of tenosynovitis, which the court held to be an ordinary disease of life and thus not compensable. In its holding, the court commented that "[i]n terms of cause and effect, we find no legally significant difference between . . . back strain and . . . Gilliam's tenosynovitis," referring to *Holly Farms v. Yancey*, 228 Va. 337, 321 S.E.2d 298 (1984). There it was expressly held that a back strain was an injury and not a disease. But even if a back strain were considered a disease, it was an ordinary disease of life and thus not compensable. We cannot tell

---

[2] A disease shall be deemed to arise out of the employment only if there is apparent to the rational mind, upon consideration of all the circumstances:

(1) A direct causal connection between the conditions under which work is performed and the occupational disease,

(2) It can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment,

(3) It can be fairly traced to the employment as the proximate cause,

(4) It does not come from a hazard to which workmen would have been equally exposed outside of the employment,

(5) It is incidental to the character of the business and not independent of the relation of employer and employee, and

(6) It must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction.

from the *Gilliam* opinion what evidence, if any, was contained in the record relating to the statutory conditions for an occupational disease. Specifically, the opinion in Gilliam cites no evidence to establish that the disease could not have resulted from a hazard to which Gilliam was equally exposed outside employment, as required by Code § 65.1-46(4).[3] However, in the record before us, the *only* medical evidence is that the carpal tunnel syndrome was caused by the employment, it was not a disease to which the claimant had a substantial exposure outside of the employment, and that it followed as a natural incident of the work. The expert opinion was uncontradicted and unchallenged.

■ We do not read *Gilliam* as requiring that, where the only evidence is that the condition is an occupational disease under the statutory definition, the commission hold otherwise and label it an ordinary disease of life simply because its onset occurred gradually. There is no language in Code § 65.1-46 requiring a sudden onset or manifestation as a condition of a disease being occupational. Such language is more appropriately associated with the concept of "injury by accident."

Furthermore, we believe the question whether a condition or disease is an ordinary disease of life is essentially a medical issue to be decided by the trier of fact based on the evidence presented. Based on the evidence in this record, the commission could find that Phyllis Knott's carpal tunnel syndrome was an occupational disease as defined in Code § 65.1-46 and not an ordinary disease of life.

The Commission's decision is reversed and the case remanded for further proceeding consistent herewith.

*Reversed and remanded.*

Barrow, J., and Keenan, J., concurred.

---

[3] Prior to 1986, Code § 65.1-46(4) read, "It does not come from a hazard to which workmen would have been equally exposed outside of the employment." In 1986, the provision was amended to read, "It is neither a disease to which an employee may have had substantial exposure outside of the employment . . . ." This statutory change, however, does not affect our reading of *Gilliam* because the *Gilliam* opinion did not contain any evidence whatsoever regarding the former standard of "equally exposed" as compared to the "substantial exposure" standard Knott must overcome.