COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Coleman and Willis


RONALD R. TOLBERT, JR.

v.   Record No. 1233-95-3                    MEMORANDUM OPINION[*]
                                                  PER CURIAM
ELECTROLUX CORPORATION                    OCTOBER 10, 1995
AND
EMPLOYERS INSURANCE OF WAUSAU

             FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              (Ronald R. Tolbert, Jr., pro se, on briefs).

              (Ramesh Murthy; Penn, Stuart, Eskridge & Jones,
              on brief), for appellees.



     Ronald R. Tolbert, Jr. contends that the Workers'

Compensation Commission erred in finding that he failed to prove

that his allergic rhinitis and sinusitis were occupational

diseases caused by his employment.  Pursuant to Rule 5A:21(b),

Electrolux Corporation ("employer") raises the additional

question of whether the commission erred in finding that

Tolbert's application was not barred by the applicable statute of

limitations.  Upon reviewing the record and the briefs of the

parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the commission's decision.  Rule

5A:27.

### I.  Background

     For ten years, Tolbert has worked as a molding machine

operator in employer's manufacturing plant.  In this job, he

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

operates a machine which produces vacuum cleaner parts. Tolbert testified that, in the fall of 1991, he began experiencing nasal stuffiness at work. He testified that his symptoms increased during the course of his work shift. Tolbert alleged that these problems were caused by his exposure to filtered air at work. He also testified that over a period of months his symptoms worsened, and he developed respiratory problems. He also began to experience dizziness, elevated blood pressure, and chest tightness. Tolbert, who is thirty-six years old, testified that he smoked a pack of cigarettes per day for eighteen to twenty years. Currently, he smokes a half a pack per day.

In March 1992, Tolbert sought medical treatment from Dr. Douglas Pote. Dr. Pote diagnosed hypertension, migraines, and dizziness. After Tolbert was given an MRI, Dr. Pote diagnosed sinusitis and dizziness. Dr. Pote prescribed a course of antibiotics and reported that Tolbert's sinuses had returned to normal on June 15, 1992. Dr. Pote's medical records do not indicate that Tolbert reported that his work environment was causing his symptoms; his records do not indicate any comment from Dr. Pote on causation.

On June 18, 1992, Tolbert sought medical treatment from Dr. Carol Dewey, a family practitioner. At that time, he complained of migraines, dizziness, increased heart rate, and chest pain; he also told Dr. Dewey that heat and smoke triggered respiratory problems. Tolbert also mentioned to Dr. Dewey that his symptoms

increased when he was in his mother's house and in air conditioned stores. Dr. Dewey diagnosed sinusitis, allergic rhinitis, and vertigo.

Dr. Dewey referred Tolbert to Dr. R. Alan Davis, an ear, nose, and throat specialist. Dr. Davis performed an audiogram and an ENG, both of which were normal. Finding no abnormality in Tolbert's sinuses or eustachian tubes, Dr. Davis referred him back to Dr. Dewey and recommended that Tolbert undergo psychological therapy and allergy testing. Dr. Davis noted that Tolbert believed his allergy symptoms were related to exposure to air conditioning at work; Dr. Davis did not render an opinion on causation.

In the fall of 1992, Dr. W. Jan Kazmier performed allergy tests on Tolbert which revealed that he is allergic to mold spores. Dr. Kazmier informed Dr. Dewey that Tolbert believed dust exposure, leaf-raking, and hay aggravated his allergy symptoms. Dr. Kazmier diagnosed nonallergic rhinitis and recommended that Tolbert avoid irritants and stop smoking. Dr. Kazmier noted that air conditioning vents, smoke and perfumes can also increase nasal stuffiness and chest congestion. Dr. Kazmier did not render an opinion on causation.

Dr. Dewey informed Tolbert that it was highly likely that mold was a factor in causing his respiratory problems and that air conditioning vents are a perfect environment for mold. Dr. Dewey admitted she could not identify the specific mold which

3

could have caused Tolbert's allergic reaction nor could she state where Tolbert was originally exposed to the molds which caused his allergy symptoms. Dr. Dewey acknowledged that Tolbert's symptoms occurred in employment and non-employment settings. She agreed that Tolbert's mold allergy could be triggered in any environment that has filtered air, such as shopping malls and office buildings, and she opined that Tolbert's work environment and exposure to air conditioning exacerbated his allergy symptoms and were precipitating factors in causing his respiratory problems.

Dr. Dewey also listed dust, pollen, grass, perfume, and animal dander as other potential causes of Tolbert's allergy symptoms. Although her report did not specifically address Tolbert's pets, Tolbert has five cats living on his home's enclosed porch and he has approximately forty to fifty tropical birds living in his home. In addressing causation, Mr. Dewey stated, "One can't cause allergic rhinitis, one can be allergic to an allergen."

## II. Occupational Disease

The commission ruled that the evidence did not prove that Tolbert had an occupational disease as defined by Code § 65.2-400. In so ruling, the commission found that the evidence established that Tolbert's allergic reaction could be triggered by exposures independent of his workplace. This finding is supported by credible evidence consisting of Tolbert's testimony

4

and the medical records.  Because the issue whether a disease is an occupational disease is a medical issue to be decided by the commission upon credible evidence, we affirm that decision.  See Ross Labs v. Barbour, 13 Va. App. 373, 377, 412 S.E.2d 205, 208 (1991); Knott v. Blue Bell, Inc., 7 Va. App. 335, 338, 373 S.E.2d 481, 483 (1988).

### III.  Ordinary Disease of Life Analysis

For an ordinary disease of life to be treated as an occupational disease, Tolbert was required to establish by clear and convincing evidence, to a reasonable degree of medical certainty, that the disease arose out of and in the course of the employment, that it did not result from causes outside the employment, that it is characteristic of the employment, and that it was caused by conditions peculiar to the employment.  Code § 65.2-401; Greif Companies v. Sipe, 16 Va. App. 709, 714, 434 S.E.2d 314, 317-18 (1993).

In denying compensation to Tolbert, the commission found as follows:

> The evidence here establishes that exposure to air conditioning systems at the work place caused [Tolbert's] allergic rhinitis to become symptomatic beginning approximately in the Fall of 1991.  However, the evidence also shows that [Tolbert] had substantial exposure to causes of that condition injury [sic] outside the work place, in shopping malls and neighbors' homes, and even in the home of his mother.  It appears that the aggregate exposures caused his symptomatic allergic rhinitis and sinusitis to develop, possibly including the exposure to filtered and conditioned air at work.  However, it is equally likely that the

5

> nonwork exposures initially triggered his allergic reaction, and the work exposure only further aggravated the resulting condition. At most, [Tolbert's] evidence shows only that the work exposures contributed with the nonwork exposures to produce the injury, but the evidence does not establish that the primary exposure is at work or that his condition did not result from causes independent of the employment. Rather the evidence shows substantial exposure to potential causes of the condition outside the workplace, which would preclude a finding of a compensable occupational disease.

Tolbert's testimony and the medical evidence amply support the commission's decision. The evidence established that Tolbert's allergy symptoms were triggered in non-employment and employment settings. Dr. Dewey did not opine that the air conditioning system or mold in Tolbert's workplace caused his allergic rhinitis. Rather, she stated that Tolbert's workplace exacerbated his symptoms. Because Tolbert failed to prove by clear and convincing evidence, to a reasonable degree of medical certainty, that the origin of his allergic rhinitis and sinusitis could be traced to his employment as the proximate cause, aggravation of these conditions was not compensable as an occupational disease. See Ashland Oil Co. v. Bean, 225 Va. 1, 300 S.E.2d 739 (1983).

For the reasons stated, we affirm the commission's decision. Because our ruling on the causation issue disposes of this appeal, we will not address the statute of limitations issue raised by employer.

Affirmed.