Salem
ROSS LABORATORIES AND ASSOCIATED
INDEMNITY CORPORATION
v.
CORA L. BARBOUR
No. 0751-91-3
Decided December 10, 1991

374

COUNSEL

Marianne Nelms Macon (Sands, Anderson, Marks & Miller, on brief), for appellants.

Robert E. Evans, for appellee.

OPINION

ELDER, J.—Appellants Ross Laboratories and Associated Indemnity Corporation ("Ross") appeal from a finding of the Workers' Compensation Commission* awarding benefits to Cora L. Barbour for her occupational disease. On appeal, Ross asserts that the commission (1) misinterpreted the words "did not result from causes outside of the employment" in Code § 65.1-46.1 and, (2) as a result of this misinterpretation, applied an incorrect burden of proof, such that employees can prevail merely by proving the lack of a substantial cause outside of the employment. We affirm the decision of the commission.

Barbour began working for Ross in 1975, and, on July 6, 1987, was employed as a machine operator. The machine she worked

---

\* Formerly the Industrial Commission of Virginia. Effective October 1, 1991, Title 65.1 was recodified as Title 65.2. All references in this opinion are to Title 65.1, in effect at the time the commission's decision was rendered in this case.

produced plastic bags and had two job stations, both of which required repetitive arm and hand movements. Her duties involved picking up a plastic neck or tube, inserting it in the machine, punching two buttons, placing a plastic bag in the machine, punching two more buttons, and removing the plastic bag to lay it on a conveyor belt. The procedure required use of both hands, and Barbour performed this sequence five or six times per minute for approximately six hours of her eight hour shift.

In addition to her work activities, Barbour shared housework with her family of three, cooked, and occasionally did some mending. She also worked in a home garden. Prior to beginning work with Ross, Barbour spent twelve years with the Lane Company, inspecting and sanding furniture. The sanding required use of both hands. She did not report any difficulty with her hands until December 21, 1987, when she told Dr. Charles Joseph that she had in the past two months experienced pain and numbness in her left hand. In a letter summarizing his examination of Barbour, Dr. Joseph diagnosed her as suffering from bilateral carpal tunnel syndrome, a condition which, in Barbour's case, he thought occupationally related. Dr. Joseph further noted that Barbour did "a lot of sewing and handwork" at home, though at the hearing Barbour testified that, while she did occasional mending, she did neither a lot of handwork nor a lot of sewing.

Barbour underwent a carpal tunnel release on her left hand on February 5, 1988, and was determined to be well healed and free of symptoms on February 22, 1988, when she was discharged from care. She returned to work at Ross on the same machine. On February 8, 1990, Dr. W. Miles Wallace, a neurologist, diagnosed Barbour as suffering from bilateral carpal tunnel syndrome and recommended further surgery. Dr. James C. Dunstan, an orthopedic surgeon, performed a bilateral carpal tunnel release on April 27, 1990. Dr. Dunstan testified that, with reasonable medical certainty, the major cause of Barbour's carpal tunnel syndrome was her job. He further stated that activities outside of her employment may have contributed to her condition. Dr. Dunstan noted a definite correlation between repetitive activity and the onset of symptoms associated with carpal tunnel syndrome. Thus, Barbour's work activities were a more likely cause of her carpal tunnel syndrome if she engaged in no activities outside work involving the same degree of repetitiveness. Dr. Dunstan based his

conclusion on conversations with Barbour that gave him what he believed was a reasonable familiarity with her job activities at Ross.

Appellant asserts that the commission misinterpreted the words "did not result from causes outside of the employment" in Code § 65.1-46.1. Appellant contends that, because the commission misinterpreted the statute, it misapplied the statute, and so raised a question of law properly reviewable on appeal. *See Brown v. Fox*, 189 Va. 509, 517, 54 S.E.2d 109, 113 (1949). We note at the outset that this Court has not previously interpreted the language at issue in this case.

Appellant urges us to read the statute as requiring a claimant to prove "by clear and convincing evidence, to a reasonable medical certainty," that non-work-related factors did not contribute to his or her disease. To adopt this interpretation would be to misread the statute.

█ Code § 65.1-46.1 provides in pertinent part:

> An ordinary disease of life to which the general public is exposed outside of the employment may be treated as an occupational disease for purposes of this Act if it is established by clear and convincing evidence, to a reasonable medical certainty, that it arose out of and in the course of employment as provided in § 65.1-46 with respect to occupational diseases and did not result from causes outside of the employment. . . .

We hold that the phrase "did not result from causes outside of the employment" does not preclude recovery in every instance where some other factor, other than those related to a claimant's work duties, may have contributed in some degree to the claimant's condition.

The Report of the Joint Subcommittee Studying Workers' Compensation, H. Doc. No. 27 (1986), noted conflicting suggestions that, on the one hand, either "materially" or "substantially" be inserted following the words "did not result" or, on the other, that "in any degree" be inserted in the same place. *Id.* at 8. The former suggestion would have indicated more clearly that the statute did not mean to preclude compensation in every case in which

some factor outside the workplace contributed to the claimant's disease. The latter suggestion would have clearly suggested an opposing interpretation. The latter amendment was, in fact, proposed by the Committee for Labor and Commerce. *Id.* App. 10 at 35. The General Assembly did not adopt the amendment, leaving this Court to parse the meaning of the statute as it now reads.

█ The language of the statute calls on the fact-finder to decide whether a claimant's disease arose out of and in the course of occupational activity or whether, instead, it "result[ed] from" non-work-related activities. In effect, the statute offers the fact-finder a choice, so that the fact-finder must locate, with "reasonable medical certainty," the cause of claimant's disease. Implicit in the Act's standard that such a determination be made "with reasonable medical certainty" is the recognition that pinpointing a single source for an ordinary disease of life will often be a difficult if not an impossible assignment. Thus, the very standard on which application of the language at issue turns points not to a single source, to the complete exclusion of all other sources, but to the primary source as determined by "reasonable medical certainty."

█ Such an interpretation is in harmony with this Court's analysis of the phrase "reasonable medical certainty" in *Westmoreland Coal Co. v. Campbell*, 7 Va. App. 217, 223-24, 372 S.E.2d 411, 416 (1988). In *Westmoreland*, we held that, on the facts of that case, for an expert medical witness to testify "to a reasonable medical certainty," the witness must conclude "it is at least *more probable than not* that the disease arose out of and in the course of employment." *Id.* (emphasis added). Therefore, where the commission has concluded that the disease flowed from the claimant's occupational activity, the mere possibility that the claimant's condition might have been influenced in some degree by another, non-work-related activity is not enough to undermine that finding of fact.

█ Ross further asserts that the commission's alleged misinterpretation resulted in the application of an incorrect burden of proof, such that employees can prevail merely by proving the lack of a substantial cause outside of the employment. The commission correctly applied the statute when it determined that the claimant's disease arose out of and in the course of her employment. "Whether a disease is causally related to the employment and not causally related to other factors is . . . a finding of fact." *Island*

*Creek Coal Co. v. Breeding*, 6 Va. App. 1, 12, 365 S.E.2d 782, 788 (1988). When there is credible evidence to support it, such a finding of fact is "conclusive and binding" on this Court. *Id.*

The commission relied on credible evidence in making its finding. For an ordinary disease of life to be compensable under Code § 65.1-46.1, the claimant must establish "by clear and convincing evidence, to a reasonable medical certainty,"

that the disease (1) arose out of and in the course of employment, (2) did not result from causes outside of the employment, and (3) follows as an incident of an occupational disease, is an infectious disease or contagious disease contracted in the course of employment, or is characteristic of the employment and was caused by conditions peculiar to the employment.

*Island Creek*, 6 Va. App. at 11, 365 S.E.2d at 788.

With respect to the first part of the test, whether the disease arose out of and in the course of employment, the commission was justified in relying on Dr. Dunstan's conclusion that Barbour's "repetitive activities at work" were "the most likely cause" of her disease. In *Westmoreland*, this Court held that, if an expert medical witness could not testify that "it is at least more probable than not that the disease arose out of and in the course of employment, compensation must and should be denied." 7 Va. App. at 224, 372 S.E.2d at 416. Because Dr. Dunstan identified "the most likely cause" of Barbour's disease, her disease is compensable.

As for the second part of the test, precluding compensation when a disease results from causes outside of employment, Dr. Dunstan indicated that "all activities with use of [Barbour's] hand contribute to the causation of her carpal tunnel syndrome." In other words, he could not say "[w]ith reasonable medical certainty . . . that [Barbour's] job was the only cause" of her disease. Nonetheless, based on his knowledge of Barbour's "repetitive activities at work," Dr. Dunstan testified that, in his opinion, "the major cause in Ms. Barbour's carpal tunnel syndrome with reasonable medical certainty is her job." The commission was justified in relying on this conclusion. As earlier noted, the mere fact that other activities outside work might have influenced Barbour's condition is not enough to undermine a finding by the commission

that the disease resulted from work-related activities.

Finally, with respect to the third prong of the test, requiring a finding that the disease be characteristic of the employment and caused by conditions peculiar to the employment, evidence in the record indicates that Barbour's work involved highly repetitive manual activity. Furthermore, Dr. Dunstan stated that there was a "definite correlation" between repetition of manual activity and the onset of carpal tunnel syndrome and that, when no activities outside work involved the same degree of repetitiveness as those activities carried out in the course of employment, the work site was more likely to be a contributing cause.

The commission had before it credible evidence on which to base its award of compensation. Because the commission neither misinterpreted the statute nor applied an incorrect burden of proof, its decision is affirmed.

*Affirmed.*

Barrow, J., and Bray, J., concurred.