COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Elder and Agee
Argued at Salem, Virginia


LEE COUNTY SCHOOL BOARD AND
 VIRGINIA MUNICIPAL GROUP
 SELF-INSURANCE ASSOCIATION
                                          OPINION BY
v.   Record No. 2610-01-3          JUDGE LARRY G. ELDER
                                          MAY 14, 2002
KITTY SUE MILLER


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Lisa Frisina Clement (Michael F. Blair;
            PennStuart, on brief), for appellants.

            D. Allison Mullins (Lee & Phipps, P.C., on
            brief), for appellee.


     Lee County School Board and Virginia Municipal Group

Self-Insurance Association (hereinafter collectively "employer")

appeal from a decision of the Workers' Compensation Commission

awarding benefits to employee Kitty Sue Miller (claimant) under

the Workers' Compensation Act.  On appeal, employer contends

claimant failed to prove by clear and convincing evidence that

her carpal tunnel syndrome (CTS) was a compensable disease under

Code § 65.2-401 because the medical evidence failed to provide a

sufficient causal link between claimant's CTS and her

employment.  We hold that the evidence as a whole, including

claimant's testimony, supported the commission's finding of

causation.  Thus, we affirm the award.

I.

BACKGROUND

Claimant began working for employer at Keokee Elementary school as a substitute employee in 1980 and became a regular employee in about 1990.  Most of that time, claimant worked as a cook, but for about two years in the mid 1990s, she worked as a janitor.  Claimant's janitorial work required her to shovel more than a ton of coal into the school's furnaces on a daily basis.  She also "worked on the furnace, took ashes out," mowed grass, used a "weed eate[r]," and installed windows.  In about 1996, she returned to working as a cook, and she worked as a cook throughout the remainder of her employment.  Claimant described her work as a cook as follows:  "[W]e cook hamburger meat which is 40 to 50 pounds in a case.  We stock.  We put all of our stock away.  We put all of our produce away.  We're constantly lifting pans, kettles, washing, mopping, we lift tables."  She agreed her job involved "repetitive lifting, rotating, bending and use of [her] wrist."

About three years prior to the December 2000 hearing, claimant began to experience problems with her arms and wrists.  She "thought it was just [the] lifting" causing her "wrists [to] get sore," and she "never thought [anything] about it" "because [she] enjoyed working."  However, when her "hands kept getting worse" and began "going numb and drawing up on her," she decided

-

to seek medical attention.  At that time, she was engaged in no hobbies or any other activities outside of work.

On October 8, 1999, claimant saw Dr. Richard Norton with complaints of pain in her upper extremities.  She reported the pain was in her shoulders, elbows and wrists and that it was worse in the mornings.  After x-rays of claimant's hands revealed no arthritic changes, Dr. Norton referred claimant to Dr. Mohammed Bhatti, a neurologist.  When Dr. Bhatti examined claimant on November 1, 1999, he detected a loss of grip strength in claimant's hands and noted the loss was greater in her dominant left hand.  Dr. Bhatti suspected carpal tunnel syndrome (CTS).  Nerve conduction studies performed on December 3, 1999, confirmed "bilateral median nerve compression in carpal tunnel, left more than right."  Claimant's nerve conduction studies also indicated right ulnar nerve compression in the cubital canal.  Dr. Bhatti noted claimant had subcutaneous knots on both arms, but he gave no indication of any connection between the nodules and claimant's CTS.

On referral from Dr. Bhatti, claimant then saw Dr. Hossein Faiz, a surgeon, regarding removal of the painful subcutaneous nodules on her elbows.  On December 15, 1999, Dr. Faiz removed the nodules.  He noted that the right nodule had attached and compressed the right ulnar nerve whereas the left nodule "was not close to any major nerve structures."  Dr. Faiz directed that a copy of his operative note be sent to Dr. Bhatti.

-

Dr. Bhatti saw claimant again on December 22, 1999, after Dr. Faiz removed the nodules from claimant's elbows. Dr. Bhatti recommended that claimant undergo a bilateral CTS release for her "[b]ilateral moderate to severe median nerve compression." Claimant confirmed that Dr. Bhatti told her in December of 1999 that she had bilateral CTS which was worse on the left.

In early 2000, claimant saw Dr. Robert Evans, an osteopath, for continuing complaints of pain in her hands. He noted she had CTS and was waiting until school was out to have decompression surgery. In his February 26, 2000 office note, Dr. Evans noted "[m]ost of the problem comes during the day while she is working. . . . [S]he has to use the hands and wrists a big deal at work and it is mostly during this time and shortly afterwards that it bothers her." When Dr. Evans saw claimant again on April 24, 2000, for "worsening pain," he noted she was a cafeteria worker and said, "I know that the repetitive nature of the work that she does, and has for years, is being the deciding factor in these bilateral carpal tunnel syndromes."

Claimant subsequently returned to Dr. Faiz for the recommended CTS surgery. However, Dr. Faiz sent claimant back to Dr. Bhatti for repeat nerve conduction studies because the last studies had been performed during the previous year. The repeat nerve conduction studies revealed "normal ulnar nerve parameters bilaterally" but showed a mild worsening of

-

claimant's left CTS. Dr. Bhatti examined claimant again on November 16, 2000, and noted no significant changes in her CTS.

Claimant testified that she told Dr. Bhatti about the "repetitive lifting, rotating, bending[,] use of [her] wrist" and "pulling" she engaged in at work and that, sometime in the year 2000, Dr. Bhatti told her that her CTS "was caused by the work, by the lifting and the tugging all day long seven hours a day," "[p]ulling all those years." Dr. Bhatti's office notes do not reflect this opinion or the communication of such an opinion to claimant. However, Dr. Bhatti opined in a November 22, 2000 letter to employer's counsel that "[claimant's] [CTS] is most probably secondary to [the] cumulative effect of several years duration involving repetitive lifting, rotating, bending, and use of wrists, regardless of weight, which may be caused by work done as is required by a cook." He also noted that "frequent breaks between [claimant's] cooking chores were observed [to] alleviate[] [her] symptoms." Finally, Dr. Bhatti indicated an awareness of the knots in claimant's arms but opined the knots "most probably have no direct bearing on [her] [CTS] symptoms unless upon surgical exploration they are found to be in the carpal tunnel region."

The deputy commissioner expressed doubts about the sufficiency of the medical evidence, standing alone, to prove causation by clear and convincing evidence. However, he found that the record as a whole, including evidence of the repetitive

-

nature of claimant's job and the absence of evidence of any non-work-related cause for claimant's CTS, permitted him to find clear and convincing evidence of causation.

With one commissioner dissenting, the commission affirmed, noting that the evidence need not prove "conclusive[ly]" that claimant's CTS resulted from her work. The majority relied on (1) evidence that claimant's job required "extensive" repetitive use of her hands and that claimant's treating physicians offered uncontradicted testimony linking her work with her CTS and (2) a lack of evidence to suggest that any non-work-related activities could have caused claimant's condition.

## II.

## ANALYSIS

The Workers' Compensation Act (the Act) provides that carpal tunnel syndrome is an "ordinary disease[] of life as defined in [Code] § 65.2-401." Code § 65.2-400(C). For an ordinary disease of life to be compensable under Code § 65.2-401, a claimant must prove by "clear and convincing evidence, (not a mere probability)," that the disease (1) "arose out of and in the course of [her] employment as provided in Code § 65.2-400 . . ."; (2) "did not result from causes outside of the employment"; and (3) "follows as an incident of occupational disease . . . [;] is an infectious or contagious disease contracted in the course of [specified types of employment]; or . . . is characteristic of the employment and was caused by

-

conditions peculiar to such employment."  Code § 65.2-401.  Code § 65.2-400(B) provides that a disease arises out of the employment "if there is[, inter alia,] . . . [a] direct causal connection between the conditions under which work is performed and the occupational disease; . . . [and] [i]t can be fairly traced to the employment as the proximate cause . . . ."  (Emphases added).

Evidence is clear and convincing when it produces in the fact finder "'a firm belief or conviction as to the allegations sought to be established.  It is . . . more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.  It does not mean clear and unequivocal.'"  Fred C. Walker Agency v. Lucas, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975) (quoting Cross v. Ledford, 120 N.E.2d 118, 123 (Ohio 1954)).

The commission's determination regarding causation is a finding of fact.  Marcus v. Arlington County Bd. of Supervisors, 15 Va. App. 544, 551, 425 S.E.2d 525, 530 (1993).  A finding of causation need not be based exclusively on medical evidence. Dollar Gen'l Store v. Cridlin, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996).  "The testimony of a claimant may also be considered in determining causation, especially where the medical testimony is inconclusive."  Id.

> "To appraise the true degree of
> indispensability which should be accorded
> medical testimony, it is first necessary to

-

> dispel the misconception that valid awards
> can stand only if accompanied by a definite
> medical diagnosis.  True, in many instances
> it may be impossible to form a judgment on
> the relation of the employment to the injury
> [or disease] . . . without analyzing in
> medical terms what the injury or disease is.
> But this is not invariably so.  In
> appropriate circumstances, awards may be
> made when medical evidence on these matters
> is inconclusive, indecisive, fragmentary,
> inconsistent, or even nonexistent."

Id. at 177, 468 S.E.2d at 154-55 (quoting 2B Arthur Larson, The Law of Workmen's Compensation § 79.51(a) (1995) (citations omitted)).  Similarly, where the diagnosis is clear but the medical evidence does not provide a sufficient causal link between the ailment and the employment, the commission may rely on the testimony of the claimant to establish this link.  Id.

In determining whether credible evidence exists to support the commission's findings of fact, "the appellate court does not retry the facts, reweigh . . . the evidence, or make its own determination of the credibility of the witnesses."  Wagner Enters. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).  Thus, unless we can say as a matter of law that claimant failed to sustain her burden of proving causation, the commission's findings are binding and conclusive upon us.  Marcus, 15 Va. App. at 551, 425 S.E.2d at 530; Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

-

Claimant produced clear and convincing evidence that her CTS (1) arose out of and in the course of her employment, (2) did not result from causes outside her employment, (3) was characteristic of her employment and (4) was caused by conditions peculiar to such employment. As the commission noted, the medical evidence did not conflict and uniformly connected claimant's condition with her employment. As the deputy commissioner and commission found, claimant's duties included "cooking, stocking, washing, mopping, shoveling coal, mowing grass, using a weed eater and managing the furnace." These duties required claimant "to use her hands and wrists a [great] deal," and claimant reported that "it is mostly during this time and shortly afterwards that [her wrists and hands] bother[] her." The evidence also indicated that "frequent breaks between [claimant's] cooking chores . . . alleviate[d] [her] symptoms."

Credible evidence established that Dr. Evans and Dr. Bhatti were aware of claimant's job duties and the effect these duties had on her symptoms. Based on this knowledge, Dr. Evans opined that "the repetitive nature of the work that [claimant] does, and has [done] for years, is being the deciding factor in these bilateral carpal tunnel syndromes." (Emphasis added). As we previously have held, the requirement that a claimant establish the source of the disease means she must point "not to a single source [of the disease], to the complete exclusion of all other

-

sources, but to the primary source . . . ." Ross Labs. v.

Barbour, 13 Va. App. 373, 377, 412 S.E.2d 205, 208 (1991); see

Marcus, 15 Va. App. at 551, 425 S.E.2d at 530.  Dr. Evans'

opinion that the repetitive nature of claimant's work was "the

deciding factor" in her development of CTS was accepted by the

commission and, considered together with claimant's testimony

and the other evidence in the record, constitutes credible

evidence that claimant's work was "the primary source" of her

CTS.[1]

_____

[1] The dissent appears to construe Dr. Evans' opinion as
stating that the nature of claimant's work was merely a factor
which contributed to her development of CTS.  On the contrary,
Dr. Evans expressly opined that claimant's work was "the
deciding factor."  (Emphasis added).  Giving these words their
ordinary import compels the conclusion, as set out in the text,
that claimant's work was "the primary source" of her CTS, which
is all that the law requires.  See Marcus, 15 Va. App. at 551,
425 S.E.2d at 530; Barbour, 13 Va. App. at 377, 412 S.E.2d at
208.
       Webster's Third New International Dictionary 585 (1993),
the source cited by the dissent, defines the word, "decide," as
follows:

> vt: to dispel doubt on: a: to arrive at
> a choice or solution concerning which ends
> uncertainty or contention <~ what to order
> for breakfast> b: to bring definitively and
> conclusively to an end esp. in matters
> relating to war <the victory at San Jacinto
> decided the war> . . . vi: to make a choice
> or decision esp. a binding or definitive one
> presumably after consideration . . . .

Under any of the above-quoted definitions of "decide," "the
deciding factor" is one which does more than simply contribute;
under the second definition above, "the deciding factor" is the
"definitive" or "conclusive" factor, rather than merely "one
possible consideration."  Thus, viewing the evidence in the
light most favorable to claimant, Dr. Evans' opinion that

-

Dr. Bhatti's opinion further supports the commission's finding of causation. Dr. Bhatti did not render his opinion based on "a mere probability," a standard rejected by the language of Code § 65.2-401. Rather, Dr. Bhatti opined that claimant's CTS "is most probably secondary to [the] cumulative effect of several years duration involving repetitive lifting, rotating, bending, and use of wrists." (Emphasis added). He acknowledged the knots on claimant's arms but opined that they "most probably ha[d] no direct bearing on her [CTS] symptoms" unless shown to have infiltrated the carpal tunnel region. (Emphasis added).

Something that is merely "probable" has "more evidence for [it] than against [it]." Black's Law Dictionary 1081 (5th ed. 1979). Thus, probability may be equated with proof by a preponderance, see Slaughter v. Valleydale Packers, Inc., 198 Va. 339, 345-46, 94 S.E.2d 260, 266 (1956), an evidentiary standard lower than the clear and convincing evidentiary standard required by Code § 65.2-401, see Lucas, 215 Va. at 540, 211 S.E.2d at 92. However, Dr. Bhatti's addition of the word "most" to his opinion changed its meaning considerably. The adverb "most" means "[i]n or to the highest degree" and is

claimant's work was "the deciding factor" in her development of bilateral CTS is sufficient to support the commission's implicit finding that it was "the primary source." See Marcus, 15 Va. App. at 551, 425 S.E.2d at 530; Barbour, 13 Va. App. at 377, 412 S.E.2d at 208.

-

"[u]sed with many adjectives and adverbs to form the superlative degree [as in] most honest [or] most impatiently." The American Heritage Dictionary of the English Language 1178 (3d ed. 1992).

Thus, the commission could reasonably conclude that Dr. Bhatti, by combining the adverbs "most" and "probably," expressed his opinion regarding the cause of claimant's CTS as "a firm belief or conviction," the standard required to prove a proposition by clear and convincing evidence. See Lucas, 215 Va. at 540, 211 S.E.2d at 92 (quoting Cross, 120 N.E.2d at 123). Further, in light of the record as a whole, Dr. Bhatti's statement that the repetitive motion and resulting CTS he described "may be caused by work done as is required by a cook" was not an equivocation and, therefore, did not diminish the weight the commission could give to Dr. Bhatti's opinion. As the commission noted, the record reflected claimant's testimony, which it found credible, that claimant's job did, in fact, require such activities. Claimant also testified that she had informed Dr. Bhatti, in response to his inquiries, about the repetitive nature of her job duties.[2] Thus, the record as a whole, including claimant's testimony and the opinions of Drs. Evans and Bhatti, contained credible evidence to support the commission's finding, by clear and convincing evidence, that

---

[2] In affirming the commission's award, we do not rely on claimant's hearsay testimony that Dr. Bhatti said her CTS was caused by her work.

-

claimant's CTS arose out of and in the course of her work for employer.

Finally, the record supports the commission's conclusion that claimant met her burden of proving her CTS did not result from causes outside of the employment. The medical evidence outlined above provided clear and convincing evidence that claimant's CTS resulted from repetitive motion rather than from the nodules on claimant's arms or from any other medical condition, and claimant testified that she engaged in no hobbies or other activities outside her work which involved this type of motion. Although statements from claimant's doctors that her CTS did not result from any causes outside of the employment may have strengthened claimant's case, such statements were not critical to the commission's determination in light of claimant's own testimony. See Cridlin, 22 Va. App. at 176-77, 468 S.E.2d at 154-55; see also Island Creek Coal Co. v. Breeding, 6 Va. App. 1, 11-12, 365 S.E.2d 782, 788 (1988) (where physician could not state "'to a reasonable medical certainty' that [claimant's] hearing loss was not caused by non-employment factors" but said "[claimant] did not give me a history of anything [outside of work] I might interpret as having caused it," the commission "could and did draw the reasonable inference that [claimant's] hearing loss was not caused by non-employment factors based on his negative history of noise exposure which

-

would cause such a hearing loss and the nonexistence of genetic or biological factors").

For these reasons, we hold the record as a whole contains credible evidence to support the commission's conclusion that claimant proved the necessary causal connection between her CTS and her employment and that she did so by clear and convincing evidence.  Therefore, we affirm the commission's award.

<u>Affirmed.</u>

Agee, J., dissenting.

To prove a compensable claim for carpal tunnel syndrome (CTS) as an ordinary disease of life under the Workers' Compensation Act (the Act), Code § 65.2-401 requires a claimant to prove, by clear and convincing evidence and not evidence indicating a mere probability, that (1) the disease arose out of and in the course of the employment as provided in Code § 65.2-400 (first prong), and (2) did not result from causes outside of the employment (second prong).  See Code § 65.2-401(1); see also Lanning v. Dep't of Transp., 37 Va. App. 701, 561 S.E.2d 33 (2002).  The plain language of Code § 65.2-401 places the burden of proof upon the claimant to prove both of these statutory prongs in order to sustain an award. Proof of only one element, but not the other, is insufficient. See Purcellville Police v. Bromser-Kloeden, 35 Va. App. 252, 259, 544 S.E.2d 381, 384 (2001) ("[A]n ordinary disease of life to which the general public is exposed outside of the employment generally is not covered by the Act unless a claimant can prove by clear and convincing evidence, inter alia, that the disease arose out of and in the course of employment and did not result from causes outside the employment.").

Construing the evidence in the light most favorable to claimant, the prevailing party below, I nonetheless find the commission's determination that claimant met her burden of proof as to the statutory prongs to be erroneous and not supported by

-

the evidence.  Accordingly, I dissent from the majority opinion for the following reasons.

A.  ARISING OUT OF AND IN THE COURSE OF EMPLOYMENT:  FIRST PRONG

Claimant was required to prove by clear and convincing evidence that her CTS arose out of her employment with the employer.

> A disease shall be deemed to arise out of the employment only if . . . [a] direct causal connection between the conditions under which work is performed and . . . [the CTS] . . . can be fairly traced to the employment as the proximate cause.

Code § 65.2-400(B) (emphasis added).  Upon a review of the record, I find the claimant failed to prove by clear and convincing evidence a direct causal connection between her condition and her employment, which was the proximate cause of her CTS.

I respectfully disagree with the majority's determination that the medical narratives of Drs. Evans and Bhatti, reviewed individually or collectively, support a finding that claimant presented clear and convincing evidence that her CTS arose out her employment with the employer.

Dr. Evans' April 24, 2000 file note stated, "I know that the repetitive nature of the work that she does, and has for years, is being the deciding factor in these bilateral carpal tunnel syndromes."  (Emphasis added).  In considering the evidence in the light most favorable to claimant, the commission

-

could construe the term "these" to refer to claimant's CTS causation, as opposed to CTS generally.  However, I disagree with the majority that use of the term "deciding factor" constitutes proof by clear and convincing evidence of a direct causal connection and proximate cause.

A "deciding factor" is a factor used to arrive at a choice or solution which ends uncertainty.  See generally Webster's Third New International Dictionary 585, 813 (1993).[3]  While this definition of a "deciding factor" may meet the standard of proof by a preponderance of the evidence, it does not meet the clear and convincing standard of proof.

Clear and convincing evidence produces in the fact finder

> "a firm belief or conviction as to the
> allegations sought to be established.  It is
> . . . more than a mere preponderance, but
> not to the extent of such certainty as is
> required beyond a reasonable doubt as in
> criminal cases."

Fred C. Walker Agency, Inc. v. Lucas, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975) (citation omitted).  Dr. Evans' term "deciding factor" begs the question:  Was it, or was it not, a

---

[3] A "factor" is defined as "something (as an element, circumstance, or influence) that contributes to the production of a result."  Webster's, supra, at 813 (emphasis added); see also Black's Law Dictionary 612 (5th ed. 1999) (defining "factor" as, inter alia, "[a] cause that contributes to a particular result").  The verb "decide" is defined as "to arrive at a choice or solution concerning which ends uncertainty or contention."  Webster's, supra, at 585.  Thus, it is reasonable to define a "deciding factor" as one possible consideration that aids in making a decision.

direct and proximate cause?  Was claimant's work simply one of multiple factors relating to CTS causation?  If so, was her work the proximate cause, a direct cause or a factor whose weight cannot be quantified?  On the record, we simply have no means of ascertaining what Dr. Evans meant when he characterized claimant's work as a "deciding factor" in "these" kinds of cases.

As such, I do not find Dr. Evans' note rises to the level of clear and convincing evidence sufficient to provide a fact finder with a firm belief that claimant's CTS was directly and proximately caused by her employment and, therefore, it does not, by itself, satisfy the first prong as a matter of law.

I also disagree with the majority's conclusion that Dr. Bhatti's written response as to causation meets the clear and convincing standard.  Dr. Bhatti wrote:

> Her carpal tunnel syndrome is most probably secondary to cumulative effect of several years duration involving repetitive lifting, rotating, bending, and use of wrists, regardless of weight, which <u>may</u> be caused by work done as is required by a cook.

(Emphasis added).  Dr. Bhatti <u>did not</u> opine that claimant's work "most probably" caused her CTS.  To the contrary, he plainly says claimant's CTS "<u>may</u> be caused by work."  "May" means to "be <u>in some degree</u> likely."  <u>Webster's</u>, <u>supra</u>, at 1396 (emphasis added).  By definition, Dr. Bhatti's inability to quantify causation by using the term "may" cannot rise to the standard of

-

proof by clear and convincing evidence as a matter of law. Consequently, his letter of November 22, 2000, does not meet the standard of clear and convincing evidence to prove the first prong under Code § 65.2-401(1).

The only evidence in the record that claimant's employment caused her condition is her own assertion that Dr. Bhatti told her that her work may have caused her CTS:

> Q.  Just as clarification, Ms. Miller, did Dr. Bhatti, in your conversations and your understanding of your conversations with him, indicate that your work <u>may</u> have been caused by carpal tunnel or was. . .
>
> A.  Yes.
>
> Q.  . . . caused by carpal—I mean, excuse me, your work caused carpal tunnel?
>
> A.  Well, me and him talked about it and I was telling him about what I did at work and the lifting and the pulling and he said that it was caused by the work, by the lifting and the tugging all day.

(Emphasis added).

While the commission may rely on the testimony of the claimant to establish causation, <u>see</u> <u>Dollar Gen'l Store v. Cridlin</u>, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996), the claimant's assertion in this case does not provide clear and convincing evidence of causation.  "[A] bare assertion . . . does not meet the 'clear and convincing standard.'"  <u>Lanning</u>, 37 Va. App. at 708, 561 S.E.2d at ____.

-

Unlike the claimant in Cridlin, who testified as to how she was injured while performing her job tasks when the medical evidence on causation was inconclusive, claimant did not testify in the case at bar to explain the cause and effect of her work environment on her CTS. Instead, claimant testified as to the medical opinion of her physician, an opinion that was not verified by the physician. While I recognize the commission's role of assigning credibility and weight to the evidence, claimant's hearsay rendition of the physician's opinion cannot be bootstrapped into proof of medical causation when the physician's own opinion fails to make the causal link. In short, I find no support for the proposition that the non-conclusory medical opinions of the physicians can be rehabilitated to rise to the level of clear and convincing evidence in this case by using claimant's self-serving version of what the physician's opinion should have been in order to meet the statutory burden of proof.

The commission was cognizant of this lack of clear and convincing evidence, but nonetheless assumed a connection. It appears to have based the decision to award benefits on the fact that employer did not present any evidence as to other possible causes of claimant's CTS. It allowed the absence of evidence as to other causes (the second prong), an evidentiary burden it placed on the employer, to amount to de facto evidence adequate

-

to satisfy claimant's requisite first prong of proof.  The deputy commissioner was fairly candid in making that leap:

> [N]o medical opinion has been offered to help us determine whether or not claimant's carpal tunnel syndrome resulted from her employment with this employer.

> \*       \*       \*       \*       \*       \*       \*

> [W]e have reservations that the evidence meets the clear and convincing standard and not a mere probability as required by Code § 65.2-401; however, as the record does not indicate any non-work related cause of claimant's bilateral carpal tunnel syndrome . . . we will resolve all our doubts in claimant's favor and conclude that she has contracted bilateral carpal tunnel syndrome as a consequence of her employment with this employer.

While not as directly, the full commission adopts a similar approach, although without the deputy commissioner's degree of candor.

There is simply no statutory or other authority to hold that the employer's failure to present evidence to disprove the second prong is somehow morphed into evidence sufficient to meet claimant's burden as to the first prong.  It was error for the commission to accord proof of the first prong, an independent statutory element of proof, by implication from lack of counter-evidence associated with the second prong.

In <u>Lindenfield v. Richmond Sheriff's Office</u>, 25 Va. App. 775, 492 S.E.2d 506 (1997), we affirmed the decision of the commission to deny benefits to a claimant who suffered from

-

tuberculosis, which he alleged he had contracted while working at the City of Richmond Jail because (1) no one in his family or close set of friends had tested positive for the disease and (2) the incidence of tuberculosis is greater among prison inmates than it is in the general population. The record contained the opinions of three physicians regarding the causation of the claimant's disease, one of which was an opinion "to a reasonable degree of medical certainty that [the] claimant contracted tuberculosis while working in the jail." Id. at 781, 492 S.E.2d at 509.[4] We held the claimant failed to prove by clear and convincing evidence that his employment in the jail caused his tuberculosis.

> Although claimant established that his risk
> of TB infection at the jail was greater than
> in the general public and he eliminated some
> possible sources of infection from outside
> of his employment (which is the second
> element of a claim under Code § 65.2-401),
> these facts alone do not compel the
> conclusion that he inhaled the TB bacteria
> while working in the jail. Instead, these
> facts merely show through an incomplete
> process of elimination that claimant may
> have contracted tuberculosis while at work.
> To hold that this method of proof
> constitutes clear and convincing evidence as

---

[4] Code § 65.2-401, at the time of the Lindenfeld case, required a claimant to prove by "clear and convincing evidence, to a reasonable degree of medical certainty" that the disease arose out of and in the course of employment. The "reasonable degree of medical certainty" evidentiary requirement has since been deleted. Our decision in Lindenfeld focused on whether the totality of the evidence met the clear and convincing evidence standard and not whether the claimant had proven by a reasonable degree of medical certainty that the disease arose out of his employment.

> a matter of law of a causal link between
> employment and a disease . . . would
> effectively shift the burden <u>to the employer</u>
> to prove that the claimant contracted his
> disease from a source outside of his
> employment.  The express provisions of Code
> § 65.2-401 assigning the burden of proof by
> clear and convincing evidence to the
> employee preclude such a conclusion.

<u>Id.</u> at 787, 492 S.E.2d at 512 (citation omitted) (emphasis in original).

Accordingly, I would reverse the commission's award because claimant has not proven, by clear and convincing evidence, that her CTS arose out of and in the course of her employment, the first prong of proof she is required to present under Code § 65.2-401(1).

B.  NO CAUSES OUTSIDE OF THE EMPLOYMENT:  SECOND PRONG

Assuming, <u>arguendo</u>, claimant's evidence on the first prong meets the clear and convincing standard, I would hold on this record that claimant failed to prove, even by a preponderance of the evidence, that no activities outside her employment with the employer caused her CTS.

The General Assembly has clearly mandated a claimant affirmatively prove, as an independent evidentiary condition precedent to an award, that her CTS did not result from causes outside of her employment.  <u>See</u> Code § 65.2-401(1).  In my view, the commission's decision rewrites this statutory burden.  In effect, the commission held that a claimant meets the statutory burden if the employer fails to produce affirmative evidence

-

that the claimant's CTS resulted from causes outside of the employment. Such a reading is erroneous and contrary to the plain language of the statute. See Lindenfeld, 25 Va. App. at 787, 492 S.E.2d at 512.

The commission specifically held that claimant met her burden of proof because "the evidence did not suggest any non-work related activities that could have caused her condition." However, as Commissioner Tarr's dissent correctly noted,

> the Act requires the claimant prove by clear
> and convincing evidence that her condition
> did not result from causes outside her work.
> The claimant's affirmative burden of proof
> is not met if the employer fails to produce
> a non-work related cause of the condition.

The majority seems to find support for the commission's placement of the evidentiary burden and its resulting decision when it notes "claimant testified that she engaged in no hobbies or other activities outside her work which involved this type of motion." The record, however, does not support that assertion. The only evidence in the record regarding non-employment activities is the following colloquy on cross-examination of claimant:

> Q.  Were you involved in a lot of other
> things outside of work at that time too?
>
> A.  No.
>
> Q.  Any type of hobbies outside of work?
>
> A.  No.

-

Q. Bowling, anything like that?

A. No.

(Emphasis added).

Claimant's testimony that she had no hobbies and did not bowl does not provide proof by clear and convincing evidence that the myriad of her life activities outside her employment did not cause the CTS.  Nowhere in the record does claimant, or anyone else, testify or offer evidence that she engaged in no other activities outside of her work for the employer which involved the type motion that could cause CTS.

Under the statutory burden of proof established by the General Assembly in Code § 65.2-401(1), a claimant must affirmatively produce clear and convincing evidence that her CTS did not result from causes outside of the employment.  While that element of proof might be satisfied by a claimant's testimony that she engaged in insubstantial or no non-work activities with the type of repetitive motion that would cause CTS, no such evidence can be found in this record.  Neither the commission nor this Court can supply or assume that evidence or, more importantly, alter the statutory burden of proof.  If the General Assembly chooses to change the statutory burden of proof under Code § 65.2-401(1), it has the power to do so.  However, neither the commission nor this Court possesses that authority.

In this case, claimant failed to adduce affirmative evidence which would satisfy even a preponderance of the

-

evidence standard, much less a clear and convincing evidence standard, as to the second prong of Code § 65.2-401(1). Accordingly, I would reverse the decision of the commission to award benefits to claimant.