COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, McClanahan and Petty
Argued at Richmond, Virginia


JOANNE WALKER HARRIS

MEMORANDUM OPINION* BY
v.        Record No. 0883-09-3          JUDGE WILLIAM G. PETTY
                                             DECEMBER 8, 2009
THE GOODYEAR TIRE AND RUBBER COMPANY AND
  LIBERTY INSURANCE CORPORATION


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Philip B. Baker (Sanzone & Baker, P.C., on brief), for appellant.

James A.L. Daniel (Martha White Medley; Daniel, Medley & Kirby,
P.C., on brief), for appellees.


On March 25, 2009, the Workers' Compensation Commission issued an opinion

reversing the deputy commissioner and holding that Harris failed to carry her burden to establish

that her injury "arose out of and in the course of her employment."  Harris appealed the

commission's final order and contends that (1) the commission erred in finding that Harris failed

to prove that her carpal tunnel syndrome was related to her employment, (2) the commission

erred in finding that Dr. Krome and Dr. Owusu-Yaw were not sufficiently aware of the duties of

Harris' job so as to offer an informed and persuasive opinion on causation, and (3) the opinion of

Dr. Jay Gordon Burch should have been excluded from consideration as a matter of law.

Because all three questions relate to the sufficiency of the evidence below and the credibility of

the witnesses, we review all three questions together.  For the following reasons, we affirm.

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

"On appeal from a decision of the Workers' Compensation Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the party prevailing below." Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 84, 608 S.E.2d 512, 517 (2005) (*en banc*).

Harris was diagnosed with carpal tunnel syndrome, which she claimed was a compensable occupational disease under Code § 65.2-400. A deputy commissioner heard evidence and awarded Harris medical benefits and temporary total disability benefits. The employer requested a review of that decision by the full commission, and the commission reversed and vacated the deputy commissioner's award and held that Harris "failed to show, with clear and convincing evidence, that her condition arose out of and in the course of her employment." Harris appealed.

Harris contends that she is entitled to benefits for her condition because her treating physicians, Drs. Krome and Owusu-Yaw, opined that her carpal tunnel syndrome was caused by her employment. Harris further complains that the commission erred in finding that Drs. Krome and Owusu-Yaw were not credible because they were not sufficiently aware of her job responsibilities to offer an informed and persuasive opinion on causation. And lastly, Harris contends that Dr. Burch's opinion should have been excluded from consideration as a matter of law because his diagnosis flowed from an obsolete legal standard.

"'Whether a disease is causally related to the employment and not causally related to other factors is . . . a finding of fact.'" Steadman v. Liberty Fabrics, Inc., 41 Va. App. 796, 799, 589 S.E.2d 465, 466 (2003) (quoting Ross Laboratories v. Barbour, 13 Va. App. 373, 377-78, 412 S.E.2d 205, 208 (1991)). Further, "we are bound by the commission's findings of fact as long as there was credible evidence presented such that a reasonable mind could conclude that the fact in issue was proved, even if there is evidence in the record that would support a contrary

- 2 -

finding." Shenandoah Motors, Inc. v. Smith, 53 Va. App. 375, 384, 672 S.E.2d 127, 131 (2009) (internal citations and quotation marks omitted). "In determining whether credible evidence exists to support the commission's findings of fact, '[we do] not retry the facts, reweigh . . . the evidence, or make [our] own determination of the credibility of the witnesses.'" Haley v. Springs Global U.S., Inc., 54 Va. App. 607, 612, 681 S.E.2d 62, 65 (2009) (quoting Tex Tech Indus. v. Ellis, 44 Va. App. 497, 504, 605 S.E.2d 759, 762 (2004)).

According to Code §§ 65.2-500 and 65.2-503, an employee is entitled to temporary or permanent workers' compensation when the incapacity for work resulting from the injury is total or partial. An "injury" is defined by the Virginia Workers' Compensation Act (the "Act") as "only injury by accident arising out of and in the course of the employment or occupational disease as defined in Chapter 4 (§ 65.2-400 et seq.) of this title . . . ." Code § 65.2-101. Carpal tunnel syndrome is not an injury by accident or an occupational disease, but rather, it is an "ordinary disease[] of life as defined in Code § 65.2-401." Code § 65.2-400(C). However, an ordinary disease of life

> may be treated as an occupational disease if each of the following elements is established by *clear and convincing evidence*, (not a mere probability):
>
> 1. That the disease exists and *arose out of and in the course of employment* as provided in § 65.2-400 with respect to occupational diseases and did not result from causes outside of the employment, and
>
> 2. That one of the following exists:
>
>     a. It follows as an incident of occupational disease as defined in this title; or
>
>     \*    \*    \*    \*    \*    \*    \*
>
>     c. It is characteristic of the employment and was *caused* by conditions peculiar to such employment.

Code § 65.2-401. The commission could find that the disease "arises out of and in the course of employment [as provided in Code § 65.2-400] only if there is apparent to the rational mind, upon consideration of all the circumstances:

1. A direct causal connection between the conditions under which work is performed and the occupational disease;

2. It can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment;

3. It can be fairly traced to the employment as the proximate cause;

4. It is neither a disease to which an employee may have had substantial exposure outside of the employment, nor any condition of the neck, back or spinal column;

5. It is incidental to the character of the business and not independent of the relation of employer and employee; *and*

6. It had its origin in a risk connected with the employment and flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction.

Code § 65.2-400(B) (emphasis added). The use of the conjunctive "and," which joins the fifth and sixth points, indicates that all six elements are necessary in order for a disease to arise out of employment. Fairfax County Fire & Rescue Dept. v. Mottram, 263 Va. 365, 559 S.E.2d 698 (2002). Thus, if one of these six elements is absent from the facts here, Harris' disease is not compensable under the Act.

Harris argues on appeal that the commission erred in denying her compensation for her carpal tunnel syndrome because she has proven all of the elements listed in Code §§ 65.2-400(B) and 65.2-401. In explaining how she proved the first element of Code § 65.2-400(B), she argues that "Dr. Krome and Dr. Owusu-Yaw have opined that there is a direct causal connection between the conditions under which [her] work was performed and her occupational disease."

- 4 -

However, the commission rejected this rationale and said that it was "not persuaded that Dr. Owusu-Yaw and Dr. Krome were sufficiently aware of the duties of [Harris'] job so as to offer an informed and persuasive opinion on causation." Harris argues that this was in error.

As noted in Celanese Fibers Co. v. Johnson, 229 Va. 117, 326 S.E.2d 687 (1985), "[f]actual findings made by the [c]ommission are conclusive and binding, and a question raised by conflicting medical opinion is a question of fact." Id. at 120, 326 S.E.2d at 690 (internal citations and quotation marks omitted). When the evidence consists of conflicting medical opinions, "[w]e do not judge the credibility of witnesses or weigh the evidence on appeal." Id. at 121, 326 S.E.2d at 690. Our inquiry, rather, is limited to determining "whether credible evidence supports the [c]ommission's finding." Id. (internal citations and quotation marks omitted). If credible evidence to support the commission's finding exists, then we must "sustain the [commission's] finding." Id. (internal citations and quotation marks omitted).

Here, when asked whether he knew Harris' specific job responsibilities, Dr. Krome stated in his deposition that "I do not currently know, and I am not sure whether she started to go into it and I just did not dictate exactly what she was telling me in terms of the exact day-to-day and ins and outs of that particular position." He further stated that he "would not have any specific way of knowing what has caused it and just taking her word as to what the onset was." In short, Dr. Krome did not state an opinion regarding the cause of Harris' carpal tunnel syndrome because he did not have any information regarding her medical history and he did not know the precise type of work she performed. The only evidence that Dr. Krome offered to support the idea that the disease was caused by Harris' job was the fact that the symptoms began when she started this particular job.

Similarly, Dr. Owusu-Yaw stated that his opinion was "based on the timing of onset of her symptoms and the relation of her symptoms to her lifestyle, which includes her job and what

she does and all that." But when asked what type of repetitive movements in her job would cause Harris to suffer from carpal tunnel syndrome, Dr. Owusu-Yaw stated that Harris did not tell him what those repetitive movements were. Further, Dr. Owusu-Yaw did not review a description of her activities outside of work or whether she exhibited symptoms of carpal tunnel syndrome before changing jobs. Thus, like Dr. Krome, he could not offer an opinion that Harris' carpal tunnel syndrome was caused by her employment simply because he did not know what Harris did at her work or whether the syndrome was caused by a factor outside of her work.

Clearly, then, the commission's reservations regarding Drs. Krome and Owusu-Yaw's knowledge of Harris' work responsibilities are well founded. While both doctors may have opined that Harris' disease was caused by her work, the commission was certainly free to disregard that opinion upon a finding that the opinion was not supported by the evidence.

Further, both Dr. Settle and Dr. Burch opined that Harris' carpal tunnel syndrome was not caused by her employment. Dr. Settle, who "had the opportunity to personally observe the job duties Ms. Harris was performing as a Goodyear employee in 2004" opined that "in [his] medical opinion the problems Ms. Harris had with her hands in November, 2004 was not caused by her job duties at Goodyear." Further, after reviewing a description of Harris' workplace and work assignment, and subsequently reviewing a video of her job duties, Dr. Burch opined that "there is no causal link between her employment and specifically change in employment and the development of carpal tunnel syndrome and the treatment required for the latter."[1]

---

[1] In a letter to the employer's counsel, Dr. Burch stated that "[t]he vast majority of cases of carpal tunnel syndrome are spontaneous in their occurrence and cannot be related to any associated factor or issues, employment, or otherwise." Harris interprets this statement to mean that Dr. Burch based his opinion on an outdated legal standard that carpal tunnel syndrome cannot be caused by employment. However, Dr. Burch did not say that carpal tunnel syndrome could not be caused by employment; he simply said that the vast majority of cases cannot be associated with a particular exercise. In order to associate carpal tunnel syndrome with a particular exercise, it appears that Dr. Burch applies the same standard as the General Assembly in Code § 65.2-401; that is, clear and convincing evidence. After reviewing the description of

Because the commission disregarded the opinions of Drs. Krome and Owusu-Yaw, Harris failed to meet her burden of proving by clear and convincing evidence that her carpal tunnel syndrome "arose out of and in the course of employment."  Further, the opinions of Dr. Settle and Dr. Burch contradict the opinions of Drs. Krome and Owusu-Yaw and reinforce the commission's finding.  Therefore, we hold that the record before us contains credible evidence in support of the commission's finding that Harris' carpal tunnel syndrome was not caused by her employment, and we will affirm the commission's ruling.

For the foregoing reasons, we affirm.

Affirmed.

---

Harris' workplace and work assignment, Dr. Burch stated that Harris' job duties did not put her at risk for carpal tunnel syndrome.  Therefore, he concluded that there is no persuasive evidence that her carpal tunnel syndrome was caused by her employment.