COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Elder and Agee
Argued at Salem, Virginia


SANDRA S. BURRESS
                                        MEMORANDUM OPINION* BY
v.    Record No. 2345-01-3             JUDGE LARRY G. ELDER
                                          APRIL 2, 2002
HUBBELL LIGHTING, INC.


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Joseph J. Steffen, Jr., for appellant.

            John Chadwick Johnson (Christopher M. Kite;
            Catherine I. Henritze; Frith Anderson &
            Peake, P.C., on brief), for appellee.


        Sandra S. Burress (claimant) appeals from a decision of the

Workers' Compensation Commission (the commission) holding that

her employer, Hubbell Lighting, Inc. (employer), was not

responsible under the Workers' Compensation Act for her

bilateral carpal tunnel syndrome.  On appeal, claimant contends

she presented sufficient credible evidence to prove her disease

was compensable under Code § 65.2-401 and that the commission's

reliance on the opinion of employer's "hired gun" on the issue

of causation was erroneous.  We hold the commission was entitled

to conclude that claimant presented insufficient credible

evidence to prove her employment was the primary source of her

_____

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

carpal tunnel syndrome.  Thus, we affirm the commission's denial of benefits.

The Workers' Compensation Act (the Act) provides that carpal tunnel syndrome is an "ordinary disease[] of life as defined in [Code] § 65.2-401."  Code § 65.2-400(C).  For an ordinary disease of life to be compensable under Code § 65.2-401, claimant must prove by "clear and convincing evidence, (not a mere probability)," that the disease (1) "arose out of and in the course of [her] employment as provided in Code § 65.2-400 . . ."; (2) "did not result from causes outside of the employment"; and (3) "follows as an incident of occupational disease . . . [;] is an infectious or contagious disease contracted in the course of [specified types of employment]; or . . . is characteristic of the employment and was caused by conditions peculiar to such employment."  Code § 65.2-401.

Code § 65.2-400(B) provides that a disease arises out of the employment "if there is[, inter alia,] . . . [a] direct causal connection between the conditions under which work is performed and the occupational disease; . . . [and] [i]t can be fairly traced to the employment as the proximate cause . . . ."  Code § 65.2-400(B) (emphases added).  In determining whether a disease was caused by the employment, we have recognized that "pinpointing a single source for an ordinary disease of life will often be a difficult if not an impossible assignment."  Ross Labs. v. Barbour, 13 Va. App. 373, 377, 412 S.E.2d 205, 208

(1991).  Thus, we have held the requirement that a claimant establish the source of the disease means she must point "not to a single source [of the disease], to the complete exclusion of all other sources, but to the primary source . . . ."  Id.; see Marcus v. Arlington County Bd. of Supervisors, 15 Va. App. 544, 551, 425 S.E.2d 525, 530 (1993).

Evidence is clear and convincing when it produces in the fact finder "'a firm belief or conviction as to the allegations sought to be established.  It is . . . more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.  It does not mean clear and unequivocal.'"  Fred C. Walker Agency v. Lucas, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975) (quoting Cross v. Ledford, 120 N.E.2d 118, 123 (Ohio 1954)).

The commission's determination regarding causation is a finding of fact.  Marcus, 15 Va. App. at 551, 425 S.E.2d at 530.  In determining whether credible evidence exists to support the commission's findings of fact, "the appellate court does not retry the facts, reweigh . . . the evidence, or make its own determination of the credibility of the witnesses."  Wagner Enters. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).  Thus, unless we can say as a matter of law that claimant's evidence sustained her burden of proving causation, the commission's findings are binding and conclusive upon us.  Marcus, 15 Va. App. at 551, 425 S.E.2d at 530; Tomko v.

- 3 -

Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

Claimant offered expert opinions from two physicians, Drs. Rollin J. Hawley and Kerry B. Donnelly, neither of which the commission found sufficient to meet claimant's burden of proving causation by clear and convincing evidence.

Dr. Hawley, a neurologist, appears to have seen claimant on only one occasion, in January 2000 when claimant's internist referred her for the nerve conduction studies which confirmed her bilateral carpal tunnel syndrome (CTS). Dr. Hawley opined at that time that claimant's CTS was "probably mostly occupational, although her obesity might be contributing." He appeared subsequently to indicate, in responding to a letter from claimant's attorney, that he agreed her "repetitive work duties were the primary cause of her development of [CTS]" and that her obesity was a contributing factor. However, he agreed with this assertion "to a reasonable degree of medical probability," whereas Code § 65.2-401 requires more than "a mere probability." Further, the record contains no indication that Dr. Hawley had any awareness of claimant's job requirements, other than the fact that she sometimes used power tools at work. The record also contains no indication Dr. Hawley was fully aware of claimant's other medical conditions. Although he mentioned her thyroid condition and described it as "stable," he was unaware of the dosage of medication she took for that

- 4 -

condition and apparently also was unaware of the results of her most recent thyroid function test. Finally, he did not mention her ongoing amenorrhea or possible early menopause, conditions documented in claimant's other medical records.

Dr. Donnelly, an orthopedic surgeon, opined when he first saw claimant on April 27, 2000, merely that her CTS was "work related" because "[s]he uses an air gun at work." After Dr. Donnelly reviewed claimant's job description and her medical history, he continued to believe her CTS was "certainly work related and aggravated by her work activities." However, the most he could say was that it was "highly probable" that claimant's work activities were "one of the major factors" in causing her CTS. He noted that although most of claimant's work would be done with claimant's dominant right hand, claimant's nerve conduction studies showed similar median neuropathy in both hands. Further, he indicated claimant's history of hypothyroidism, amenorrhea and possible "early menopause," and he noted all of these conditions "can be associated with the development of [CTS,] particularly thyroid imbalance."

Dr. Darrell Powledge reviewed claimant's case at the request of employer. Dr. Powledge had practiced occupational medicine for 14 years and indicated that "[e]stablishing whether or not a medical disorder has been caused by one's occupation is a common task we undertake in this specialty." Dr. Powledge also explained that his masters thesis involved designing an

assessment tool for evaluating whether particular jobs posed a risk for the development of CTS.  Dr. Powledge did not examine claimant but reviewed her medical records, deposition and a videotape of her job, and he visited claimant's job site, where he performed some of her job tasks under the direction of her supervisor.

Dr. Powledge explained that in order for repetitive work to cause CTS, the repetition must be "accompanied by grip of sufficient force" and that vibration and cold contribute to the development of CTS only indirectly by causing one to increase grip strength.  He noted it is "imperative" that each hand be assessed individually for exposure to these forces because "[i]t is unusual for each hand to be exposed to the same amount of work."  He described in detail the physical motion and grip strength required for claimant's job and evaluated its ability to cause CTS using what he described as a "well respected" methodology called the "strain index."  He opined that the "strain index" was "the most objective analytical tool for evaluating jobs for the risk they pose for the development of upper extremity disorders."

Using this methodology, Dr. Powledge opined that claimant's job "does not present the physical factors that can be causative of CTS in sufficient magnitude to be causative of CTS."  In addition to Dr. Powledge's own analysis of claimant's job requirements, he referred to her deposition, which he

- 6 -

characterized as "stat[ing] that [claimant] used her right hand predominantly at work especially with the air tool which she implicated as being very stressful." However, he noted claimant's additional statement that "her symptoms are equally bad in both hands," a fact confirmed by the results of her nerve conduction studies, which indicated moderately severe CTS in both hands. Dr. Powledge concluded, based on claimant's description of her job, his analysis of claimant's job, and the bilateral nature of her CTS, "that the job was not a risk for the development of CTS in either hand."

Dr. Powledge noted claimant had several other conditions, amenorrhea/menopausal symptoms, obesity, hypothyroidism requiring treatment, and fluid retention, all of which have been shown to be causative of, associated with, or associated with the increased risk of development of CTS. He opined, "with far more than a reasonable degree of medical certainty[,] that [claimant's] bilateral [CTS] was not caused by her work" for employer.

"Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing." Hungerford Mech. Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991). Thus, the commission was entitled to conclude, as it did, that "claimant's evidence falls far short of the clear and convincing standard required by Code § 65.2-401" and that Dr. Powledge's opinion was "extremely

persuasive."  Dr. Hawley related claimant's CTS to her work only to a reasonable degree of medical probability, which does not amount to clear and convincing evidence as required by the statute.  See Code § 65.2-401.  Further, as the commission noted, Dr. Hawley qualified his opinion on causation by noting other contributing factors such as obesity, and as outlined above, the commission was entitled to conclude Dr. Hawley demonstrated an insufficient familiarity with claimant's job requirements and additional medical history.  As the commission further noted, Dr. Donnelly opined that "claimant's job was just one of the major factors" causing her CTS, a "statement [which] implies the existence of other[] major factors in the development of the condition."  Dr. Donnelly in fact acknowledged that claimant's hypothyroidism and "early menopause" were both conditions which could be associated with the development of CTS.  Thus, the commission was entitled to conclude Dr. Donnelly's opinion did not establish, as required by both the language of Code § 65.2-400(B)(3) and Marcus, that claimant's work was "the proximate cause" or "the primary source" of her CTS.

In addition to the weaknesses in claimant's own evidence, the commission found highly credible the opinion of Dr. Powledge.  It emphasized that Dr. Powledge was board-certified in occupational medicine, had extensively studied CTS and the relationship between workplace activities

- 8 -

and the development of CTS, and had carefully considered the physical requirements of claimant's work for employer. It found well reasoned, as it was entitled to do, Dr. Powledge's opinion that claimant's job, which primarily required the use of her right hand, "was not a risk factor" in the development of CTS and that claimant's amenorrhea, menopausal symptoms, obesity, hyperthyroidism and fluid retention were conditions which could be causative of her CTS.

We note, however, that neither our decision nor the commission's compels the conclusion that an expert must perform or visualize a job firsthand or by video in order to render a credible medical opinion. We also note Dr. Powledge's admission that the "strain index" is only "semiquantitative." We view the "strain index" as a highly subjective methodology in light of Dr. Powledge's use of vague terms not defined in his report, such as "light" to describe the "intensity of exertion," "small" to describe the "duration of grip as a percentage of the work cycle," and "good to very good" to describe "wrist posture." Finally, we note, as the deputy commissioner did, that the task of making the ultimate finding regarding causation remains with the commission and the Courts and not with medical personnel. The fact that we may have reached a contrary conclusion regarding Dr. Powledge's testimony is immaterial in view of the commission's finding that the opinions of Drs. Hawley and Donnelly were insufficient to meet claimant's burden of proving

causation by clear and convincing evidence.  Because we cannot say as a matter of law that claimant sustained her burden of proof, we affirm.

<u>Affirmed.</u>