COURT OF APPEALS OF VIRGINIA


Present:   Judges Beales, Powell and Alston
Argued at Richmond, Virginia


HEARTLAND HOSPICE MANOR CARE, INC. AND
   BROADSPIRE SERVICES, INC.

                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 2319-09-2                    JUDGE ROSSIE D. ALSTON, JR.
                                                            APRIL 27, 2010

CAROLYN PATTON


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Michael P. Del Bueno (Brandon R. Jordan; Whitt & Del
              Bueno, P.C., on briefs), for appellants.

              Tara D'Lutz (William G. Shields; Shields & Lippson, on
              brief), for appellee.


       Heartland Hospice Manor Care, Inc., and Broadspire Services, Inc., (collectively, the

"employer"), appeal a decision of the Workers' Compensation Commission ("commission")

awarding payment of medical expenses to Carolyn Patton ("claimant").  On appeal, employer

assigns nine errors to the commission's decision.  Each of employer's assignments of error

relates to a single issue on appeal:  whether credible evidence supports the commission's

decision to award costs for medical treatment claimant received after March 27, 2007.  For the

reasons that follow, we hold the commission did not err in finding the medical treatment

claimant received after March 27, 2007, was causally related to her compensable work injury.

Thus, we affirm the commission's decision.  We deny employer's request to assess the cost of

preparing the joint appendix against claimant, pursuant to Rule 5A:25.

_____

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On appeal of a decision of the commission, we construe the evidence in the light most favorable to the party prevailing below. Lynchburg Foundry Co. v. Goad, 15 Va. App. 710, 712, 427 S.E.2d 215, 217 (1993). In the instant case, we construe the evidence in the light most favorable to claimant, as she was the prevailing party below.

So viewed, the evidence showed that on November 2, 2006, claimant was involved in a work-related automobile accident while working for employer as a hospice nurse. The parties agree that prior to the work accident, claimant endured a number of ailments and injuries. Claimant suffered from non-work-related arthritis, diabetes, and scoliosis, for which she regularly saw a chiropractor. In 1996, claimant was involved in an automobile accident and suffered injuries to her shoulders and neck. In 2003 and 2005, claimant received medical treatment for work-related injuries to her lower back and hips. In October 2006, just prior to the work accident at issue, claimant tripped down a flight of stairs, causing her to suffer pain in her lower back and left hip. On October 30, 2006, three days before the work accident, claimant complained to her chiropractor about soreness in her hips resulting from a bus trip.

After the November 2, 2006 accident, claimant began treatment in Richmond, with Dr. Charles Bonner, a specialist in physical medicine and rehabilitation, for back injuries suffered in the accident. She also received chiropractic treatments at the Back in Action facility, also located in Richmond. On January 7, 2007, claimant returned to her job as a hospice nurse without restrictions. In March 2007, she accepted a new hospice nurse job in Williamsburg.

On March 27, 2007, Dr. Bonner released claimant from his care. Dr. Bonner noted that claimant's injuries had resolved, and he instructed claimant to return as needed. The same day,

---

[1] As the parties are fully conversant with the record and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of this appeal.

claimant saw Dr. Christine Neusen at Back In Action.  Claimant told Dr. Neusen that she was still experiencing persistent right hip pain, although the pain had decreased in intensity. Dr. Neusen noted that claimant had reached "maximum medical improvement," but that she had not returned to pre-injury levels of activity because she was still experiencing hip pain that limited her ability to stand for long periods or sleep on her right side.  Dr. Neusen released claimant from her care and advised claimant to continue rehabilitation exercises.  Claimant did not return to either Dr. Bonner or Dr. Neusen after March 27, 2007.  However, on October 27, 2008, a year and a half after claimant's last visit to Dr. Bonner, he prescribed a nerve stimulation device (TENS unit) to assist claimant in managing her "long-term" pain.

In November 2007, claimant received a referral from her employer to see Dr. Daniel Carr, an orthopedic surgeon with Tidewater Physicians Multispecialty Group, located in Williamsburg.  Upon claimant's initial visit to Dr. Carr on November 5, 2007, she complained of soreness in her right hip.  Dr. Carr diagnosed claimant with a persistent soft tissue injury in her right hip, and referred her to Dr. Robert Pinto, a family chiropractic doctor, and Dr. Mike Potter, also with Tidewater Physicians.  The same day, claimant saw Dr. Pinto.  He noted that claimant continued to have symptoms from the November 2, 2006 work accident, including pain in her right hip.

On January 7, 2008, and February 8, 2008, claimant saw Dr. Potter.  Based on an MRI showing disc bulging and "facet degenerative changes" on claimant's right side, Dr. Potter noted that claimant's continuing pain *may* be a result of her work accident.  He referred claimant back to Dr. Pinto for facet work and to Dr. Mark Newman for facet injections.

On July 28, 2008, claimant filed a claim with the commission, seeking recovery of medical costs for the treatment she received after the November 2006 work accident.  Employer

agreed to cover claimant's costs up until March 27, 2007, but disputed any treatment after that point as unrelated to the work injury.

Prior to a hearing on the claim, employer contacted Dr. Carr, asking for his medical opinion as to whether claimant's treatment and current symptoms were related to the work accident or her pre-existing conditions. Dr. Carr responded,

> [O]bviously, this is very difficult to tell as I did not see the patient before [November 5, 2007]. These [pre-existing conditions] can be recurrent, and I would believe that obviously if you had trouble in the same area before[,] there is a predisposition to having re[-]exacerbation of these symptoms. I am therefore unable to comment on how much is new and how much is old having not seen the patient before [November 5, 2007]. It is clear to me that she was having acute symptoms upon my visit.

Dr. Carr further commented,

> [W]hy does it appear that [claimant] has in March of 2007 returned to her preinjury status[? I]t would be my opinion that at that time she was reasonably functional. She certainly does need to be careful. She may need ongoing treatment. It is impossible, as stated previously, to determine whether what [sic] percentage of this is a result of her first injury and what is a result of her motor vehicle accident.

Employer also sent a letter to Dr. Bonner, asking for his medical opinion as to when claimant's injuries resolved. Dr. Bonner responded that in his opinion, claimant's injuries related to the November 2006 work accident resolved on March 27, 2007. At that time, Dr. Bonner advised claimant that she should return if needed, but claimant never returned for further treatment.

Dr. Carr's and Dr. Bonner's letters to employer, as well as claimant's medical records from all of the relevant providers, were admitted into evidence at a hearing before the deputy commissioner. At the hearing, claimant testified that she continued to experience pain in her right hip after her last appointment with Dr. Bonner on March 27, 2007; but because she started a new job in Williamsburg, she was unable to take off work to travel to Richmond for further

- 4 -

treatment. Claimant stated that she returned to work without restrictions in January 2007, but her new position did not require her to move patients. Claimant further testified that she was able to "self-medicate" for some time after March 2007 because of her experience as a hospice nurse. However, by November 2007, claimant stated that her pain had become more intense and she requested approval from her employer to begin seeing Dr. Carr. Claimant acknowledged that she sought medical attention in Richmond in July 2007, and at that time she reported no musculoskeletal pain. However, she testified that she was seeking emergency treatment for anemia, and her primary focus was informing her doctors about the symptoms related to her anemia.

Claimant's husband also testified that following the work accident, claimant complained of severe and constant pain in her lower back and hips. He noted that she made no complaints of right hip pain before the accident.

Based on all the evidence, the deputy commissioner found claimant's treatment after March 27, 2007, was causally related to her November 2, 2006 work injury. Specifically, the deputy commissioner noted that in contrast to Dr. Bonner's opinion that claimant fully recovered on March 27, 2007, claimant continued to complain about right hip pain when she saw Dr. Neusen the same day. Further, the deputy commissioner found claimant's testimony credible, and gave great weight to Dr. Carr's opinion that claimant's current symptoms "are the result of either her work injury on November 2, 2006[,] or a combination of that new injury and an exacerbation of her pre-existing condition."

On September 21, 2009, a majority of the full commission affirmed the deputy commissioner's decision. Employer timely filed this appeal.

## II. ANALYSIS

On appeal, employer argues the commission erred (1) in disregarding Dr. Bonner's medical opinion that claimant's injuries resolved on March 27, 2007; (2) in finding Dr. Carr's opinion was that at least a portion of claimant's current symptoms resulted from the work accident; (3) in assigning more weight to Dr. Carr's opinion than Dr. Bonner's; and (4) in finding claimant met her burden of proving the treatment she received after March 27, 2007, was causally related to the work accident.[2]

On appeal of a decision of the commission, we must uphold the commission's findings of fact if the record contains credible evidence to support them. Lynchburg Foundry Co., 15 Va. App. at 712, 427 S.E.2d at 217; Classic Floors, Inc. v. Guy, 9 Va. App. 90, 95, 383 S.E.2d 761, 764 (1989). "'In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses.'" Pruden v. Plasser Am. Corp., 45 Va. App. 566, 574-75, 612 S.E.2d 738, 742 (2005) (quoting Wagner Enters. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)).

It is claimant's burden to prove to the commission that the medical treatment for which she seeks payment is causally related to the accident, is reasonable and necessary for treatment of her compensable injury, and is recommended by an authorized treating physician. Volvo White Truck Corp. v. Hedge, 1 Va. App. 195, 199-200, 336 S.E.2d 903, 906 (1985); accord Code § 65.2-603. "Causation of a medical condition may be proved by either direct or circumstantial evidence, including medical evidence or 'the testimony of a claimant.'" Farmington Country Club v. Marshall, 47 Va. App. 15, 26, 622 S.E.2d 233, 239 (2005) (quoting Dollar Gen. Store v.

---

[2] Employer presented nine issues to this Court on appeal. However, many of employer's questions presented are simply restatements of other questions. For purposes of clarity, our analysis encompasses all of the arguments employer presents, but is not divided into nine parts.

Cridlin, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996)). "The commission's determination regarding causation is a finding of fact." Id. (citing Marcus v. Arlington County Bd. of Supers., 15 Va. App. 544, 551, 425 S.E.2d 525, 530 (1993)). "Thus, unless we can say as a matter of law that claimant failed to sustain her burden of proving causation, the commission's findings are binding and conclusive upon us." Id. at 27, 622 S.E.2d at 239 (citing Marcus, 15 Va. App. at 551, 425 S.E.2d at 530).

Employer argues the commission erred in relying on Dr. Carr's statement, rather than Dr. Bonner's opinion that claimant's injuries resolved on March 27, 2007. However, the same day Dr. Bonner released claimant from his care, Dr. Neusen noted that claimant was still experiencing persistent right hip pain and that claimant had not returned to pre-injury levels of activity. Further, Dr. Bonner noted that his opinion was based, at least in part, on the fact that claimant never returned to him for treatment. Dr. Bonner's opinion does not comport with the remaining evidence before the commission. Claimant explained that she did not return to Dr. Bonner because she moved to Williamsburg and was unable to take time away from her new job. She further testified that she was able to take care of herself for some time because she is trained as a nurse. However, in November 2007, her pain became too intense and at that point, she received a referral to see Dr. Carr. The medical records from Dr. Carr and claimant's subsequent providers indicate that claimant continued to experience right hip pain from the work accident. Further, Dr. Bonner's own records contrast with his statement that claimant fully recovered in March 2007. On October 27, 2008, Dr. Bonner prescribed a TENS unit, specifically noting that the device was prescribed for long-term pain resulting *from the incident on November 2, 2006*. Based on the evidence, the commission, as fact finder, was entitled to assign little if any weight to Dr. Bonner's opinion that claimant's injuries resolved.

- 7 -

In contrast, Dr. Carr's opinion, while arguably incongruous, concluded that while he was unable to ascertain the extent to which claimant's current symptoms related to the work injury, it was clear that she was suffering acute symptoms upon her visit to him and that she may need ongoing treatment. While Dr. Carr was unable to determine what specific percentage of claimant's current condition related to the work accident, he certainly did not opine that none of her symptoms related to the accident. Thus, it was not error for the commission to interpret Dr. Carr's opinion as indicating that at least some of claimant's symptoms after March 27, 2007, related to the work accident. As it is not within the province of this Court to reweigh the evidence, we cannot say the commission erred in placing more weight on Dr. Carr's opinion than Dr. Bonner's.

Further, Dr. Carr's opinion is corroborated by claimant's testimony. "In appropriate circumstances, awards may be made when medical evidence on these matters is inconclusive, indecisive, fragmentary, inconsistent, or even nonexistent." Cridlin, 22 Va. App. at 177, 468 S.E.2d at 154-55. "[M]edical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing." Id. at 176, 468 S.E.2d at 154 (citing Hungerford Mech. Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991)). "To appraise the true degree of indispensability which should be accorded medical testimony, it is first necessary to dispel the misconception that valid awards can stand only if accompanied by a definite medical diagnosis." Id. (citing Arthur Lawson, The Law of Workman's Compensation § 79.51(a) (1995)).

Claimant testified that she never, before the work accident, had the type of pain in her right hip that she experienced after the work accident. She further testified that the pain did not subside after March 27, 2007, but that she was able to treat herself for some time before she saw Dr. Carr. Claimant's husband corroborated this account, noting that claimant never complained

of right hip pain before the accident. Additionally, the evidence showed that although claimant failed to report musculoskeletal pain in July 2007, she was undergoing emergency treatment for anemia at that time. It was entirely reasonable for the commission to believe claimant only reported symptoms that she thought to be related to her anemia. Finally, claimant explained that although she returned to work in January 2007 without work restrictions, she was not required to move patients in this capacity or otherwise perform duties that would be restricted by her hip ailment. The commission apparently credited claimant's testimony, and we see no reason to disturb that factual finding on appeal.

Finally, employer contends claimant did not meet her burden of proving the medical treatment she received after March 27, 2007, was causally related to the November 2, 2006 accident, given her pre-existing conditions.[3] In addition to the testimony regarding claimant's condition, the commission had before it an extensive medical history and the medical records from claimant's providers since the work injury. Those records indicate that on January 24, 2008, claimant's MRI showed mild disc bulging and "facet degenerative changes at L5-S1 on the right." There is nothing in claimant's medical history indicating the presence of this particular condition before the November 2, 2006 accident or the need for facet injections. Further, claimant was seen by doctors at Back in Action both before and after the work injury. It was only after the November 2006 accident that claimant's records indicate recurring right hip and gluteal pain.

Given the medical records, along with claimant's testimony, the commission had credible evidence upon which it could find claimant's treatment after March 27, 2007, was causally related to the work injury. Accordingly, we affirm the commission's decision.

---

[3] Employer apparently accepted the fact that claimant's hip and back injuries were causally related to the work accident before March 27, 2007, as employer agreed to pay for treatment up until that time.

Finally, employer asks this Court, pursuant to Rule 5A:25, to order claimant to bear at least a portion of the cost of preparing the joint appendix on appeal. "If parts of the record are included in the appendix unnecessarily at the direction of a party, the Court of Appeals may impose the cost of producing such parts on that party." Rule 5A:25. In the instant case, claimant designated over 2,500 pages to be included in the joint appendix. Claimant's counsel suggests that much of this sizeable designation was related to the counsel's inability to cooperate in the preparation of the joint appendix. Suffice it to say that we do not encourage litigants to include voluminous records and place the burden upon this Court to parse the record for pertinent information. However, in the instant case, we conclude that the extensive medical records designated by claimant were plausibly necessary to defend employer's claim that the injuries resulted from claimant's pre-existing conditions.

## III. CONCLUSION

For these reasons, we hold the commission did not err in finding claimant's medical treatment received after March 27, 2007, was causally related to the work injury, and we affirm the decision. We deny employer's request to assess costs against claimant pursuant to Rule 5A:25.

Affirmed.